550 S.E.2d 636

## In re Shanee CAROL B.

### No. 28888.

Supreme Court of Appeals of
West Virginia.

Submitted June 12, 2001.

Decided June 29, 2001.

Harley E. Stollings, Esq., Summersville, West Virginia, Guardian ad Litem.

Gregory W. Sproles, Esq., Breckinridge, Davis & Sproles, Summersville, West Virginia, for Ralph & Patricia B.

Margaret L. Workman, Esq., Margaret Workman Law, Charleston, West Virginia, Attorney for Richard & Valerie A.

Darrell V. McGraw, Jr., Esq., Attorney General, Tanya Godfrey, Esq., Assistant Attorney General, Charleston, Keith W. McMillion, Esq., Prosecuting Attorney of Nicholas County, Kelly Hamon, Esq., Assistant Prosecuting Attorney of Nicholas County, Summersville, West Virginia, Attorneys for West Virginia Dept. of H&HR.

MAYNARD, Justice:

This is a disputed adoption case. The Circuit Court of Nicholas County awarded the infant, Shanee Carol B.,[1] to her paternal aunt and uncle, Ralph and Patricia B., the appellees. The infant's maternal aunt and uncle, Richard and Valerie A., now appeal this ruling. For the reasons stated below, we reverse.

## I.

## FACTS

In September, 2000, Eric and Krissa B., the biological parents of Shanee Carol B. ("Shanee"), born on July 16, 1998, relinquished their parental rights to Shanee after a finding of neglect. Subsequently, Ralph and Patricia B. ("the Bs"), the paternal aunt and uncle of Shanee, appellees herein, sought to adopt her. The appellants, Richard and Valerie A. ("the As"), Shanee's maternal aunt and uncle, also sought to adopt her. Previously, Richard and Valerie A. adopted Shanee's siblings, Eric, born on January 1, 1996, and Shaquilla, born on January 23, 1993, after the children's biological parents relinquished their parental rights to these children. Shanee has been living with Richard and Valerie A. since May 2000, when she was temporarily placed there by the West Virginia Department of Health and Human Resources ("DHHR").

The Circuit Court of Nicholas County held several hearings to determine the ultimate placement of Shanee. During one of these hearings, Shanee's Child Protective Services Worker from the DHHR testified that Shanee should be placed with Richard and Valerie A. This recommendation was based in large part on the "sibling preference" found in W.Va.Code § 49–2–14(e), and on the psychological profiles of the prospective parents. The guardian ad litem recommended that Shanee be placed with Ralph and Patricia B. Admitted into evidence were the psychological profiles performed by Stephen L. O'Keefe, Ph.D., and his letter to the judge in which he recommended shared parenting between the parties. Also, Dr. O'Keefe, who performed the psychological profiles on both sets of prospective parents, testified that, although both couples are appropriate for the

---

1. Consistent with our practice in cases involving sensitive matters and children, we use Shanee's last name initial as well as the last name initial of her biological parents and maternal and paternal aunts and uncles.

placement of Shanee, he recommended Mr. and Mrs. B.[2]

By order of November 21, 2000, the circuit court found that it is in the best interests of Shanee to be placed with Ralph and Patricia B., and that visitation of one weekend a month be continued with Richard and Valerie A. for six months. The circuit court made the following findings of fact and conclusions of law.

1. The Court has considered the preference for sibling placement contained in West Virginia Code § 49–2–14 and find [sic] the presumption of placement is rebutted due to the following:

a. The infant, Shanee Carol [B.], was born to the natural parents after the rights to any siblings had been terminated and said siblings had been adopted.

b. No sibling bond was ever formed between the infant ... and her siblings and therefore no siblings [sic] relationship actually exists, also there were occasional visits on holidays.

c. The Court originally place[d] the infant ... in the temporary care of the [sic] Ralph and Patricia [B.], and was asked to move the child to the [As ] by the [DHHR] as they felt placement with the siblings was mandatory. At the time the infant ... was moved, the Court stated that it would not consider the move when deciding final placement.

d. The relationship between Ralph [B.] and Patricia [B.] on the one hand and the infant ... were [sic] formed while the child was still quite young and before the removal of the infant ... as Ralph [B.] and Patricia [B.] babysat for the infant ..., fed her and bathed her.

2. Placement of the infant ... with Ralph [B.] and Patricia [B.] would be in the best interest of the infant ... for the following reasons:

a. Ralph [B.] and Patricia [B.] are the natural uncle and aunt of the infant, Shanee Carol [B.], and were frequent caretakers of the child and provided financial and support services to said infant ... before her removal from the home of the biological parents.

b. After an investigation the Guardian–Ad–Litem recommended that placement with [the Bs ] would be in the best interests of the infant[.]

c. A psychological evaluation of Dr. Stephen O'Keefe found that either of the homes would be beneficial to the child but that placement with [the Bs ] was in the best interest of the infant[.]

d. The [DHHR's] recommendation of placement with [the As ] was because they felt they were bound by West Virginia Code § 49–2–14.

e. Even though both fathers had psychological issues with placing the child in the home according to Dr. O'Keefe, the scales in that regard tilt in favor of placement with [the Bs ].

f. Even though both prospective fathers had criminal records that would be considered minor and would not interfere with either's ability to be an appropriate parent.

g. The infant, Shanee Carol [B.], had bonded with both [the Bs ] and [the As ].

h. Dr. Stephen L. O'Keefe, a psychologist who conducted a psychological evaluation on all of the relevant parties, recommended placement of the infant ... with Ralph [B.]and Patricia [B.].

i. [The Bs ] do not have a child in their home.

---

**2.** Dr. O'Keefe explained that the As ' advantage is that they have already adopted Shanee's siblings. The disadvantage is that Eric, Shanee's brother, is very active and difficult to manage, so that having both Eric and Shanee may be quite difficult for Mr. and Mrs. A. The advantage of placing her with Ralph and Patricia B. is that she would be the only child in the home. The disadvantage is that Mr. B. had been the main source of support of Shanee's biological parents, who lived on the same property, so that Shanee's placement with Mr. and Mrs. B. may be compromised

by contact with her biological parents. (Shanee's biological parents no longer live on the same property.) When pressed to choose between the prospective parents, Dr. O'Keefe concluded that "[t]he value of having [Shanee] in a home that does not demand the competition that's there with another sibling who is as close and is as demanding as [Eric] is, I think tips the balance towards placing [Shanee] in the [Bs '] home. That's in direct contrast to a value that says children ought to stay together, and I realize that."

j. Based upon the testimony of Dr. O'Keefe, the two (2) siblings are [sic] in the home of [the *As*], are very demanding siblings.

3. The Court does conclude by finding that the placement of the child with [the *Bs*] in which the infant ... is the only child in the home, would allow the infant ... to have greater security, attention and resources, and further, that Dr. O'Keefe found that placement with the infant's ... siblings may not be in the best interest of any of the children due to the extra stress that would be placed on the parents.

The circuit court stayed the execution of the order for seven days in order to allow Richard and Valerie A. to file an appeal. This Court subsequently granted the petition for appeal and stayed the execution of the circuit court's order pending resolution of the appeal.

## II.

### STANDARD OF REVIEW

■ Prior to discussing the issues raised by the parties, we set forth the applicable standards of review.

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). Also, "[w]e review the circuit court's application of the law to undisputed facts *de novo.*" *In Re Petrey*, 206 W.Va. 489, 490, 525 S.E.2d 680, 681 (1999). *See also Lee v. Gentlemen's Club, Inc.*, 208 W.Va. 564, 542 S.E.2d 78 (2000); *State ex rel. United Mine Workers v. Waters*, 200 W.Va. 289, 489

S.E.2d 266 (1997); and *Lawrence v. Cue Paging Corp.*, 194 W.Va. 638, 461 S.E.2d 144 (1995).

## III.

### DISCUSSION

Richard and Valerie A. and the DHHR aver that the circuit court erred in failing to adhere to the strong sibling preference mandated by West Virginia statute and case law. They argue that our law prefers that Shanee remain with her two siblings absent clear and convincing evidence to the contrary.

Ralph and Patricia B. and the guardian ad litem respond that the sibling preference expressed in W.Va.Code § 49–2–14 is rebutted by the evidence. First, they note that Shanee never developed a close bond with her siblings because they were removed from the household prior to her birth, and there is no evidence that Shanee even knew her siblings prior to being placed with Richard and Valerie A. in May 2000. Second, W.Va.Code § 49–2–14(e) provides for the separation of siblings if harm would result to one or more of the siblings by joining them, and if reunification would not be in their best interests. The guardian ad litem claims that both of these circumstances are present here as shown by Dr. O'Keefe's testimony that Eric, Shanee's brother, is "hyper"[3] and demanding, and that his competition with his sister Shaquilla is "unusual" and "extreme." The guardian ad litem concludes that the needs of both Shanee and Eric would be compromised by competition for attention in the A. household. Finally, the guardian ad litem points to Dr. O'Keefe's finding that Richard A. is emotionally detached from the children and his wife and dissatisfied with life in general as evidence that Shanee should not be placed with Richard and Valerie A.

■ This case is governed by W.Va.Code § 49–2–14(e) (1995)[4] which states:

or more siblings have been placed in separate foster care arrangements and the foster parents of the siblings have applied to enter a foster care arrangement with the sibling or siblings not in their home, or where two or more adoptive parents seek to adopt a sibling or siblings of a child they have previously adopted. In such instances,

---

**3.** Dr. O'Keefe clarified that he was not diagnosing Eric as having Attention Deficit Hyperactivity Disorder.

**4.** During oral argument before this Court, there was some discussion regarding the applicability of W.Va.Code § 49–2–14(f) to this case. This code section concerns circumstances where two

(e) When a child is in a foster care arrangement and is residing separately from a sibling or siblings who are in another foster home or who have been adopted by another family and the parents with whom the placed or adopted sibling or siblings reside have made application to the department to establish an intent to adopt or to enter into a foster care arrangement regarding a child so that said child may be united or reunited with a sibling or siblings, the state department shall upon a determination of the fitness of the persons and household seeking to enter into a foster care arrangement or seek an adoption which would unite or reunite siblings, and if termination and new placement are in the best interests of the children, terminate the foster care arrangement and place the child in the household with the sibling or siblings: Provided, That if the department is of the opinion based upon available evidence that residing in the same home would have a harmful physical, mental or psychological effect on one or more of the sibling children or if the child has a physical or mental disability which the existing foster home can better accommodate, or if the department can document that the reunification of the siblings would not be in the best interest of one or all of the children, the state department may petition the circuit court for an order allowing the separation of the siblings to continue: Provided, however, That if the child is twelve years of age or older, the state department shall provide the child the option of remaining in the existing foster care arrangement if remaining is in the best interests of the child. In any proceeding brought by the department to maintain separation of siblings, such separation may be ordered only if the court determines that clear and convincing evidence supports the department's determination. In any proceeding brought by the department seeking to maintain separation of siblings, notice shall be afforded, in addition to any other persons required by any provision of this code to receive notice, to the persons seeking to adopt a sibling or siblings of a previously placed or adopted child and said persons may be parties to any such action.

The parties agree that this code section expresses a preference that siblings be placed in the same household. As noted above, however, Richard and Valerie A. aver that the circuit court improperly disregarded the "sibling preference," and Ralph and Patricia B. assert that the "sibling preference" is rebutted by the evidence.

■ West Virginia has a "public policy of attempting to unite siblings in foster care placements." *State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 257, 496 S.E.2d 198, 207 (1997). *See also In Re Michael Ray T.*, 206 W.Va. 434, 439 n. 15, 525 S.E.2d 315, 320 n. 15 (1999). This Court has held:

> In cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact.

Syllabus Point 4, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991). In *James M.*, 185 W.Va. at 658, 408 S.E.2d at 410, we recognized that "sibling relationships often become more meaningful for brothers and sisters when they are permanently separated from their mothers and fathers[.]"

Other courts also have articulated a preference for keeping siblings together in various contexts. In *Eschbach v. Eschbach*, 56 N.Y.2d 167, 173, 451 N.Y.S.2d 658, 662, 436 N.E.2d 1260, 1264 (1982), the Court of Appeals of New York explained:

> [I]t is often in the child's best interests to continue to live with his siblings. . . . "Close familial relationships are much to be encouraged." (*Matter of Ebert v. Ebert, supra,* [38 N.Y.2d 700] at p. 704, 382 N.Y.S.2d 472, 346 N.E.2d 240 [(1976)].) "Young brothers and sisters need each other's strengths and association in their

placement is based solely on the best interests of the siblings. In the instant case, however, both of Shanee's siblings are in one adoptive arrangement, and the issue is whether Shanee should be united with them. Therefore, W.Va.Code § 49-2-14(e) is the more applicable code section.

everyday and often common experiences, and to separate them, unnecessarily, is likely to be traumatic and harmful." (*Obey v. Degling, supra, [*37 N.Y.2d 768] at p. 771, 375 N.Y.S.2d 91, 337 N.E.2d 601 [(1975)]; *Matter of Gunderud v. Gunderud,* 75 A.D.2d 691, 427 N.Y.S.2d 92; *Bistany v. Bistany, [*66 A.D.2d 1026, 411 N.Y.S.2d 728 (1978)*] supra.*)

Likewise, the Court of Appeals of Louisiana opined in *Theriot v. Huval,* 413 So.2d 337, 341 (1982):

> The separation of children of a family, though sometimes necessary, is a custodial disposition that courts seek to avoid. Normally, the welfare of these children is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape it orders to maintain family solidarity. (Quoting *Tiffee v. Tiffee,* 254 La. 381, 223 So.2d 840 (La.1969)).

*See also, In Re Marriage of Smiley,* 518 N.W.2d 376, 380 (Iowa 1994) ("Siblings should not be separated from one another without good and compelling reasons"); *Cochenour v. Cochenour,* 642 S.W.2d 402, 404 (Mo.Ct.App.1982) ("Absent exceptional circumstances, the children of divorced parents should not be separated"); *In the Matter of the Marriage of Scott,* 31 Or.App. 975, 571 P.2d 1281 (1977); *Bake v. Bake,* 772 P.2d 461 (Utah Ct.App.1989); *Price v. Price,* 611 N.W.2d 425 (S.D.2000); and *In the Interest of Pena,* 999 S.W.2d 521 (Tex.App.1999).

 Further, it is axiomatic in this Court that "[i]n ... custody matters, we have traditionally held paramount the best interests of the child." Syllabus Point 5, in part, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996). On numerous occasions we have said that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). During oral argument, Mr. and Mrs. A. asserted that W.Va.Code § 49–2–14(e) subordinates the best interests of the child consideration to the sibling preference. Mr. and Mrs. B. countered that the best interests of the child consideration remains paramount in

cases such as the instant one, and that the sibling preference is a secondary consideration. We believe that both sibling preference and best interests of the child considerations are incorporated in W.Va.Code § 49–2–14(e). In order to determine how these considerations interact, we look to the clear provisions of the statute.

W.Va.Code § 49–2–14(e) provides that the DHHR is the entity charged with deciding whether to place a child in the same household of his or her siblings. Further, the DHHR is to place the child with his or her siblings if it determines that the persons with whom the child's siblings reside are fit *and* that placement with the child's siblings is in the best interests of all of the children. The statute lists three instances in which the DHHR may seek the separation of the siblings. These are if the DHHR determines that residing in the same home would have a harmful physical, mental or psychological effect on one or more of the sibling children; if the child being placed has a physical or mental disability which the child's existing placement can better accommodate; or if the DHHR can document that the siblings' reunification would not be in the best interests of one or all of the children. Significantly, the code section provides that in instances where the DHHR seeks the siblings' separation, "such separation may be ordered only if the court determines that clear and convincing evidence supports the [DHHR's] determination." W.Va.Code § 49–2–14(e).

 In the instant case, the DHHR did not determine that Shanee should be separated from her siblings but rather that she should be united with them. The standard to be used by the circuit court in reviewing the DHHR's determination that siblings should be united, instead of separated, is not specifically provided for in W.Va.Code § 49–2–14(e). However, because the statute provides that the circuit court is not to order separation, when recommended by the DHHR, in the absence of clear and convincing evidence supporting the DHHR's determination, we believe that it follows that the circuit court is not to disregard the DHHR's recommendation that siblings should be unit-

ed, unless it finds that clear and convincing evidence indicates to the contrary.

■ Therefore, we hold that W.Va. Code § 49–2–14(e) (1995) provides for a "sibling preference" wherein the West Virginia Department of Health and Human Resources is to place a child, who is in the department's custody, with the foster or adoptive parent(s) of the child's sibling or siblings, where the foster or adoptive parents seek the care and custody of the child, and the department determines (1) the fitness of the persons seeking to enter into a foster care or adoption arrangement which would unite or reunite the siblings, *and* (2) placement of the child with his or her siblings is in the best interests of the children. In any proceeding brought by the department to maintain separation of siblings, such separation may be ordered only if the circuit court determines that clear and convincing evidence supports the department's determination. Upon review by the circuit court of the department's determination to unite a child with his or her siblings, such determination shall be disregarded *only* where the circuit court finds, by clear and convincing evidence, that the persons with whom the department seeks to place the child are unfit *or* that placement of the child with his or her siblings is not in the best interests of one or all of the children. We now review the circuit court's decision in light of this standard.

■ Initially, we note that Ralph and Patricia B. and the guardian ad litem essentially challenge the relevance of the sibling preference under the instant facts because, until Shanee was temporarily placed with Richard and Valerie A. by the circuit court, Shanee *apparently had little contact with her siblings* and had not bonded with them. We do not believe, however, that this fact negates the sibling preference. Shanee and her siblings are still quite young in age so that, given the opportunity, Shanee can still bond with her siblings, come to appreciate their companionship, and ultimately enjoy all of the advantages in life afforded by growing up with brothers and sisters. This Court should not disregard the fact that Shanee has siblings merely because, up to this point in her young life, she unfortunately has not had ample

opportunity to enjoy their association. Accordingly, we believe it is proper to apply the sibling preference in our consideration of this case.

■ By all accounts both sets of prospective adoptive parents in this case would be suitable parents for Shanee. Dr. O'Keefe, in whose assessment the circuit court placed great weight, found both households "to meet all of the standards of adequacy." He determined, however, that the balance tipped toward Ralph and Patricia B. due to the fact that Shanee's siblings, who live with Richard and Valerie A., are extremely active and demanding children. Dr. O'Keefe concluded that Shanee would be better off in the B. household where she would be the only child and would not have to compete with her siblings for attention. Dr. O'Keefe realized, however, that his assessment is "in direct contrast to a value that says children ought to stay together[.]" The circuit court essentially hinged its decision to disregard the recommendation of the DHHR and the sibling preference on Dr. O'Keefe's opinion, and found that,

> the placement of the child with [*the Bs* ] in which the infant, Shanee Carol [B.], is the only child in the home, would allow the infant, Shanee Carol [B.], to have greater security, attention and resources, and further, that Dr. O'Keefe found that placement with the infant's . . . siblings may not be in the best interest of any of the children due to the extra stress that would be placed on the parents.

■ Ordinarily, "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977). In the instant case, however, the circuit court is bound to apply the legal standard set forth in W.Va.Code § 49–2–14(e) to the facts of the case in order to determine whether there is clear and convincing evidence to rebut the sibling preference. Because this matter concerns the circuit court's application of the law to

undisputed facts, we will review the circuit court's decision *de novo.* *See In Re Petrey,* *supra.* In other words, we look at the evidence as if for the first time.

■ According to W.Va.Code § 49–2–14(e), the DHHR's recommendation that Shanee be placed with Mr. and Mrs. A. is not to be disregarded absent clear and convincing evidence to the contrary. "Clear ... and convincing proof ... is the highest possible standard of civil proof defined as 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *Wheeling Dollar Savings & Trust v. Singer,* 162 W.Va. 502, 510, 250 S.E.2d 369, 374 (1978) (quoting *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118, 123 (1954)) (citation omitted). We are simply not persuaded that clear and convincing evidence supports the conclusion that it is in Shanee's best interests to be separated from her siblings.

The evidence indicates that Richard and Valerie A. have been good parents to Shanee's siblings. According to the findings of fact of the circuit court, based on Dr. O'Keefe's psychological evaluations, "either of the homes would be beneficial to the child[.]" The circuit court found further that Shanee had bonded with both Ralph and Patricia B. and Richard and Valerie A. In fact, the only negative unique to the A. household contained in the circuit court's findings is that Shanee's two siblings are "very demanding." [5]

In addition, Dr. O'Keefe testified that he is convinced that Richard and Valerie A. "are very fine parents for the two children they

already have, and that they could handle this third child without difficulty." The evidence shows also that Richard and Valerie A. are mature, stable people. Although the psychological profiles indicated areas of concern for both Mr. A. and Mr. B., Dr. O'Keefe adjudged Mr. A. to be "a very competent parent." He described Mr. A. as "pretty mild tempered," and free of any type of alcohol or drug abuse, or unmanageable psychological conflicts or threatening stresses. According to Dr. O'Keefe, Mr. A. "probably would handle any life changes very effectively.... [H]e has a lot of emotional reserve to take the roll with the punches, take whatever comes his way." Dr. O'Keefe concluded that "it would be a reasonable choice to place [Shanee] with [the *As* ]," and added that "[t]he only disadvantage I see from [the *As* ] is that [Shanee's two siblings] are very, what I'm going to call, high maintenance kids."

■ In light of this evidence concerning Richard and Valerie A., in addition to the sibling preference found in W.Va.Code § 49–2–14(e), this Court concludes that the fact that Shanee's two siblings are active and demanding does not constitute clear and convincing evidence that it is in Shanee's best interests to be separated from them. In other words, after considering all of the evidence adduced below, we are not left with a firm conviction that separation is in the best interests of Shanee and/or her siblings. Accordingly, we find that the circuit court erred in failing to give due consideration to the sibling preference in W.Va.Code § 49–2–14(e), and in ordering that Shanee be separated from her siblings.[6]

---

**5.** The circuit court found that both Mr. A. and Mr. B. have psychological issues with placing Shanee in their household, and that both of them have minor criminal records.

**6.** Richard and Valerie A. raised other assignments of error in their appeal to this Court, but because we grant them the relief which they seek for the reasons stated above, we do not find it necessary to address the other assignments of error.

We do note, however, that Mr. and Mrs. A. allege that the guardian ad litem acted improperly because he represented Mrs. B. in a "lemon law" case in 1996–1997 prior to representing Shanee in the instant case. Further, there was

no disclosure made by the guardian ad litem to the trial court or Mr. and Mrs. A. of his prior representation of Mrs. B. before the circuit court ruled on Shanee's placement. In addition, during oral argument it was asserted that the guardian ad litem did not interview Mr. and Mrs. A. before recommending that Shanee be placed with Mr. and Mrs. B. The circuit court held a hearing on the guardian ad litem's alleged conflict of interest and found that the guardian ad litem did nothing improper. Because we have reversed on other grounds, we will not review the circuit court's order. We do not wish to leave the impression, however, that the conduct of the guardian ad litem in this case is the acceptable standard for guardians ad litem in

We note in closing that the circuit court was faced in this case with a very difficult decision affecting the lives of three young children. Compounding the difficulty of the circuit court's decision was the task of choosing between prospective parents all of whom, the evidence indicates, are good people who would be responsible and capable custodians of Shanee. If the sibling preference articulated by this Court and set forth by the legislature in W.Va.Code § 49-2-14(e) were not a factor in determining Shanee's placement, we would be hard pressed to find fault with the circuit court's decision. Nevertheless, our law prefers, in the absence of compelling circumstances, that siblings enjoy the many advantages of growing up together and the attendant opportunities to forge meaningful, life-long relationships.

## IV.

## CONCLUSION

For the reasons stated above, we reverse the November 21, 2000 order of the Circuit Court of Nicholas County, and we order that the infant, Shanee, be placed for adoption with her siblings in the household of Richard and Valerie A.

Reversed.

future cases. Accordingly, we believe that a few appropriate comments are in order.

Children, in cases like the instant one, have a right to be represented by counsel in every stage of the proceedings. The chief duty of guardians ad litem is to act in the best interests of the children for whom they are appointed. Guardians ad litem must act with competence, reasonable diligence, and promptness. Also, guardians ad litem are to make a full and independent investigation of the facts involved in the proceeding prior to making their recommendations to the court. See Syllabus Point 5, In Re Jeffrey R.L., 190 W.Va. 24, 435 S.E.2d 162 (1993). A full and independent investigation includes interviewing all prospective parents when a child's placement is at issue.

We believe, further, that the duties set forth above require guardians ad litem to avoid conduct which reflects adversely on the undivided devotion owed by guardians ad litem to the children they represent. Guardians ad litem, therefore, have an affirmative duty to disqualify themselves following cognizance of good cause and to disclose facts that possibly could disqualify them from representing children in certain instances. Also, courts should be careful to appoint guardians ad litem who are free from any hint of conflict of interest.

Applying the above principles to the facts before us, we believe that it would have been better if Shanee's guardian ad litem had no prior recent relationship with either set of prospective parents. Also, the guardian ad litem should have disclosed his recent representation of Mrs. B. to the circuit court and to Mr. and Mrs. A. Finally, he should have interviewed Mr. and Mrs. A. before recommending Mr. and Mrs. B. for Shanee's placement.

Having said all of the above, however, we realize that this is not a perfect world and there are no perfect cases. Accordingly, we conclude by emphasizing that our statements are meant to be instructive in future cases, and we certainly do not find any intentional wrongdoing on the part of the guardian ad litem in this case.