**STATE OF WEST VIRGINIA**

**FILED**

**June 12, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**IN RE: SERENITY O.**

**No. 12-1239** (Mingo County 11-JA-46)

# MEMORANDUM DECISION

This is an appeal by foster parents Mark and Sarah K. (hereafter "foster parents") of the September 4, 2012, order of the Circuit Court of Mingo County, granting permanent custody of their foster child, Serenity O., to a paternal aunt, Ebony I. (hereafter "aunt") who resides in Detroit, Michigan.[1] The foster parents maintain that the circuit court's placement decision is not supported by the evidence and is contrary to law. The Department of Health and Human Resources (hereafter "DHHR") has found either home to be an appropriate permanent placement for the child. The guardian ad litem supports the lower court's decision and asserts that the aunt's home serves the best interests of the child.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the decision of the circuit court. Because this case does not present a new or significant issue of law, it is proper for disposition pursuant to Rule 21 of the West Virginia Revised Rules of Appellate Procedure.

The narrow record accompanying this appeal reveals little about the basis of the underlying abuse and neglect petition. What is clear is that the parental rights of the mother were involuntarily terminated, and the circuit court accepted the father's voluntary relinquishment of his parental rights. It is also clear that Serenity was placed in the home of the foster parents when she was released from the hospital after being born. The foster home is where her two older half-sibling sisters reside as adopted daughters. Also living in the

---

[1]Pursuant to Rule 40 of the *West Virginia Rules of Appellate Procedure*, the identities of juveniles are protected in Court documents. Initials or descriptive terms are used instead of full names to promote confidentiality.

1

home are three brothers whom the foster parents have adopted from a different family. The boys had been removed from deplorable conditions in a home where an uncle was permitted to sexually abuse the boys. Two of the sons had developmental disabilities.

The aunt testified at a dispositional hearing on April 24, 2012, that she learned of Serenity being her brother's child when the infant was six weeks old, at which point she began faithfully to attend all court hearings regarding the child. She said that she became involved so that she could provide the child with a home in Michigan where her niece would have "a whole family that is willing and waiting on her to accept her." The aunt also said that she was "quite aware of her [Serenity's] relationship with her half siblings, and if the court allows me to take custody of my niece I will insure that she keeps in touch with that relationship with her half sisters."

Both the foster home and the aunt's home were considered by DHHR as the permanent placement for Serenity. During the April 24, 2012, dispositional hearing, the attorney for DHHR stated:

> Your honor, on behalf of the Department, . . . [Mark and Sarah K.] are, of course, certified foster parents. They have adopted the two older siblings of the subject child. This child has been in their home, I believe, in May that would be a year.

> The Department, if called to testify, would testify . . . [Mark and Sarah K.] are appropriate individuals and would also testify . . . [the aunt] has been more than compliant with everything that has been requested of her. She lives, I think, about nine hours away. Since she intervened, I believe, at the adjudicatory hearing she has appeared at every proceeding and she visits with the child when she is here and those visits have gone well. She participated in a home study in the State of Michigan that was very positive. I believe she has one child of her own. She works, she has her own residence. Everything about her seems absolutely appropriate. . . .

Following this the circuit court inquired: "So DHHR believes both are appropriate but makes no specific recommendation?" The DHHR lawyer replied, "Both are appropriate. There is no recommendation, Your Honor. It is the Department's position that the Court will have to be the person who makes this decision."

At this same hearing, the foster parents testified of their love for Serenity, the child's bond with her sisters and their desire to eventually adopt Serenity. They also admitted that their house was messy, that with Serenity there were six children aged twelve and under living in the home along with two older biological children of the foster parents. They also indicated that they were making improvements on their house to expand the living quarters, but that the improvements were primarily being done by the foster father who also worked full time as a teacher. They admitted that it would be some time before the home improvements would be completed.

Upon DHHR's failure to perform its duty to make a recommendation as to whether the statutory preference for placement of the child with siblings was in the best interests of Serenity,[2] the circuit court requested the guardian ad litem to conduct an independent evaluation of the homes. The guardian ad litem expressed her dismay with the crowded condition and messiness of the foster home along with her concern that the adopted boys posed a potential threat to the girls in the family. She stated, "Serenity can't possibly get all the attention that she needs in that [foster] home." She indicated that she had also gone to the aunt's home in Detroit and found it to be a safe and more appropriate placement for the child.

The standard of review applicable to abuse and neglect proceedings is stated in syllabus point one of *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), as follows:

> Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case

---

[2]*See* W.Va. Code § 49-2-14 (e) and (f) (placement in home with siblings preferred); Syl. Pt. 4, *In re Carol B.*, 209 W.Va. 658, 550 S.E.2d 636 (2001) (DHHR's duties with regard to placement in light of statutory sibling preference).

differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

The conflicting testimony presented at the hearing about the foster parents' home was detailed in the findings of fact of the September 4, 2012, order of the circuit court permanently placing Serenity with her aunt. From the order it appears that the lower court resolved the conflict by relying on the recommendation of the guardian ad litem and finding that the placement with the aunt was in the best interests of Serenity. The relevant conclusions of the circuit court as stated in the order are:

> That the Court FINDS that any attachment between the subject child and her older half-siblings would be minimal at best;

> That the Court FINDS that it is in the best interests of the subject child to be permanency [sic] separated from her half-siblings;

> That it is in the best interests of the minor child and the least restrictive alternative that the subject child be immediately transferred to the physical custody of the Intervenor, [___ ___] (aunt), with a goal of adoption.

The placement order also expressly directs that the aunt "shall allow no contact" between her brother (Serenity's father) and the child.

West Virginia's statutory preference for placement of abused and neglected children with siblings is not absolute. W.Va. Code § 49-2-14 (e) and (f); *In re Carol B.*, 209 W.Va. 658, 550 S.E.2d 636 (2001) (court may order separation of siblings when recommended by DHHR if recommendation is in the child's best interest as shown by clear and convincing evidence). Ultimately, the determining factor as to the appropriate placement of a child is the best interests of that child. *In re Clifford K.,* 217 W.Va. 625, 634, 619 S.E.2d 138, 147 (2005) ("[T]he best interests of the child as . . . the paramount consideration by which custody determinations should be made."); *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children.").

Based upon our review, the Court cannot say that the circuit court's decision was clearly erroneous, or that the facts leave the definite and firm conviction that Serenity's best interests will not be served through the placement with her aunt with the goal of adoption. Accordingly, we affirm the September 4, 2012, order of the Circuit Court of Mingo County.

Affirmed.

ISSUED: June 12, 2013

CONCURRED IN BY:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5