FILED
November 12, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0921 – *In re B.A.*

Armstead, Chief Justice, dissenting:

I dissent from the majority opinion's decision to remand this matter to the circuit court with directions for it to consider the sibling preference.[1]   In ruling on Petitioners' ("foster parents") motion for continued placement of the child, B.A., the circuit court was tasked with considering whether the foster parents could satisfy the "good moral character" requirement set forth in W. Va. Code § 48-22-701(d) (2001).   Based on the allegations raised by the Guardian ad litem ("GAL"), as well as the recommendation of the DHHR, the circuit court concluded that the foster parents could not satisfy this requirement. The evidence in the record strongly supports the circuit court's conclusion.   Because the foster parents cannot satisfy the good moral character requirement, I would affirm the circuit court's ruling.

West Virginia Code § 48-22-701(d) requires a circuit court in an adoption proceeding to consider certain factors prior to approving the adoption:

> the court or judge thereof [must be] satisfied that the petitioner is, or the petitioners are, of good moral character, and of respectable standing in the community, and are able properly to maintain and educate the child to be adopted, and that the best interests of the child would be promoted by such adoption[.]

In the present case, the DHHR and GAL recommended the removal of B.A. from the foster parents' home after the GAL's investigation uncovered the foster father's

---

[1] The sibling preference is contained in W. Va. Code § 49-4-111(e) (2015), and in this Court's holding in *In re Carol B.*, 209 W. Va. 658, 550 S.E.2d 636 (2001).

failure to pay approximately $46,000 in child support despite having the financial ability to do so. Further, the GAL uncovered liens and judgments against the foster father's contracting business, as well as personal judgments against the foster parents for unpaid babysitting services. Those liens and judgments amounted to over $65,000.

The circuit court agreed with the recommendation of the GAL and the DHHR. It explained that "the Court does not believe that it can make a finding that a father who knowingly fails to pay child support for a child he acknowledges to be his when he has the financial ability to do [so] is of good moral character." It also found, "there are over $65,000 in judgments against [the foster parents] which are of record and set forth" in the GAL's report. Additionally, during the hearing, the circuit court noted that the foster father won $16,000 while gambling the previous year, and yet, still owed $46,000 in child support. The circuit court commented that despite the money won by the foster father, he "did not use it to take care of his obligations as a biological father."[2] Based on all of these findings, the circuit court denied the foster parents' motion to have B.A. placed in their custody.

---

[2] I disagree with the foster parents' argument that their gambling income was improperly considered by the circuit court. As noted by the foster parents, gambling is a lawful activity in West Virginia. However, the circuit court's general inquiry into why the foster father had $46,000 in unpaid child support was clearly relevant to its "good moral character" analysis. Part of this inquiry involved asking the relevant question: how could the foster father defend the fact that he won $16,000 while gambling but "did not use [these winnings] to take care of his obligations as a biological father." Considering the purpose of this hearing—examining whether placing B.A. in the foster parents' custody was in the child's best interest—this inquiry seems extremely relevant.

The majority opinion properly found that "the finances of prospective adoptive parents may be considered as part of the analysis" under W. Va. Code § 48-22-701(d).[3] However, I disagree with the majority opinion's finding that the circuit court's failure to discuss the sibling preference in its order necessitates a remand under the facts of this case.

West Virginia has a "public policy of attempting to unite siblings in foster care placements." *State ex rel. Paul B. v. Hill*, 201 W. Va. 248, 257, 496 S.E.2d 198, 207 (1997). This Court held in syllabus point four of *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991), that

> [i]n cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact.

While the sibling preference is well-established by caselaw from this Court and W. Va. Code § 49-4-111(e), the preference simply has no bearing on the central issue

---

[3] Courts outside of our jurisdiction have concluded that a parent's failure to financially support a child may result in a finding that the parent lacks good moral character. One instance in which this issue has arisen is when a person is attempting to become a naturalized citizen. *See Dos Reis v. McCleary*, 200 F. Supp. 3d 291 (D. Mass. 2016) (Alien's failure to pay child support was willful, and thus he lacked good moral character for naturalization under catchall provision of statute listing categories precluding finding of good moral character); *In re Malaszenko*, 204 F. Supp. 744 (D.N.J. 1962) (Willful failure to support his natural children shows individual not to be of such good moral character as to entitle him to citizenship); *U.S. v. Harrison*, 180 F.2d 981 (9th Cir. 1950) (wife desertion and nonsupport of children of tender age being factors deemed to be evidence of a lack of good moral character).

in the instant case—whether the foster parents can satisfy the "good moral character" requirement contained in W. Va. Code § 48-22-701(d). This Court has continually held that in custody matters, the best interest of the child is the most important factor. *See* Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W. Va. 302, 47 S.E.2d 221 (1948) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided."); Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."); Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In . . . custody matters, we have traditionally held paramount the best interests of the child."). The circuit court's order in the instant matter expressly stated that it took the best interests of the child into consideration.

In sum, the circuit court has already determined that the foster parents cannot satisfy the good moral character requirement contained in W. Va. Code § 48-22-701(d). It explained that it "does not believe that it can make a finding that a father who knowingly fails to pay child support for a child he acknowledges to be his when he has the financial ability to do [so] is of good moral character." The application of the sibling preference to this matter will not change that determination.

Based on the foregoing, I respectfully dissent from the majority opinion's ruling.