**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **M.M., W.M., T.M., and J.T.**

**No. 20-0902** (Webster County 19-JA-33, 19-JA-34, 19-JA-35, and 19-JA-36)

**MEMORANDUM DECISION**

Petitioner Intervenors E.P. and C.A., by counsel R. Brandon Johnson, appeal the Circuit Court of Webster County's October 7, 2020, order denying them permanent placement of M.M., W.M., T.M., and J.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioners argue that the circuit court erred in denying them placement of the children upon an erroneous preference for foster parents.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]In their statement of facts, petitioners set forth several allegations regarding the circuit court's rulings on their participation in the proceedings below and their ability to obtain documents for this appeal, in addition to "other troublesome violations committed against them." Petitioners do not, however, raise any of these allegations in the argument section of their brief or otherwise develop these arguments such that they could be considered on appeal. This is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that

> [t]he brief must contain an argument exhibiting clearly the *points of* fact and *law presented, the standard of review applicable, and citing the authorities relied on* . . . [and] must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(continued . . . )

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Because of the narrow legal issue presented on appeal, it is unnecessary to provide a protracted procedural history of the proceedings below. Further, given that the termination of the parents' parental rights to the children is not at issue on appeal, it is sufficient to note that the DHHR filed its abuse and neglect petition against the parents in August of 2019 and their parental rights were eventually terminated.[3]

This appeal instead focuses entirely upon the circuit court's permanent placement of the children. During the proceedings, M.M., W.M., and T.M. were placed in one foster home, while J.T. was placed in a separate foster home. According to the record, the DHHR had difficulty locating a home that would accept all four children, despite efforts to place them together. Relevant to this appeal, J.T. was placed in the home of S.L.-1 and S.L.-2 in March of 2020 and developed a bond with those foster parents. Further, the record shows that when J.T. was placed in this foster home, these foster parents expressed an interest in obtaining custody of all four children. The record further shows that the foster mother for M.M., W.M., and T.M. did not wish to be considered as a permanent placement for those children, as she had recently adopted other children not involved in these proceedings. Additionally, the record shows that several of the children's relatives appeared and expressed interest in adopting some or all of the children, so the DHHR initiated home studies to determine what placements would be appropriate.

---

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by Rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioners' brief in regard to the allegations set forth in the statement of facts is inadequate as it fails to comply with Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, Administrative Order. Accordingly, the Court will not address these allegations on appeal.

[3]Only the mother appealed from the lower court's disposition. This Court affirmed the termination of her parental rights. *In re M.M., W.M., T.M., and J.T.*, No. 20-0187, 2020 WL 5240660 (W. Va. Sept. 3, 2020)(memorandum decision).

It is further important to note that petitioners, intervenors below, never had custody of the children at any point during the proceedings. Instead, they were acquaintances of M.M., W.M., and T.M.'s foster mother and had provided care for those children on some occasions when the foster mother required assistance. The record shows that petitioners notified the DHHR during the proceedings that they wished to adopt all four children, and that the DHHR considered petitioners a fictive kinship placement for those three children. According to the record, an adoption specialist for M.M., W.M., and T.M. testified that she "believe[d] that we need to look at the [petitioners'] home as a kinship/relative placement" and that it had been certified as such. The court inquired as to how that certification was determined, and the witness explained that petitioners "had a relationship with the children prior to . . . placement" and that the children "spent a night in the home of [petitioners], so that makes them a 'fictive' kinship."

Ultimately, the court held a final permanency hearing in September of 2020, during which it first ruled out several potential relative placements for various issues that rendered them unsuitable for the children's final placements. The court then found that the decision between petitioners and J.T.'s foster parents was difficult but relied on the fact that J.T.'s foster parents were the only individuals being considered for permanent placement that currently had custody of any of the children. In making its determination, the court found that "the sibling preference and foster parent preference applies." Further, the court found that M.M. W.M., and T.M. had met petitioners through activities in their community and had visited their home, while J.T.'s foster parents met those children through sibling visitation with J.T. The court also found that although M.M., W.M., and T.M.'s foster mother did not want permanent placement of the children she "attempted to manipulate the situation so that [those children] stay in her community where she may continue to have contact with them." Based on the foregoing, the court awarded permanent placement of all the children to J.T.'s foster parents and ordered a gradual transition of M.M., W.M., and T.M. into their home.[4] It is from the circuit court's order denying them permanent placement of the children that petitioners appeal.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[4]According to the guardian's supplemental appendix, the circuit court issued an order granting the DHHR and guardian's "Emergency Joint Motion to Move Children" based upon allegations that M.M., W.M., and T.M.'s foster mother accosted the guardian following the final permanency hearing and that continuation in her home during the gradual transition period was inappropriate. As such, the children are all currently in the home of J.T.'s foster parents. The permanency plan for the children is adoption together in the current foster home.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners raise a narrow legal issue to support their position, arguing that "[t]his Court should reverse . . . for one key reason" being that the lower court based its decision "on a non-existent, made-up legal standard . . . called 'the foster parent preference' while also purposely ignoring [p]etitioners' fictive kinship designation." Petitioners correctly cite to our prior holdings wherein we have explained that "[i]t is clear from our jurisprudence that the only statutory preference within our laws regarding the adoption of a child involves grandparents and reunification of siblings." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 193, 706 S.E.2d 381, 390 (2011). We find, however, that the circuit court's repeated references to a foster parent preference was nothing more than a semantic error and does not entitle petitioners to relief, given that it is apparent that the circuit court was complying with this Court's prior holdings regarding the preference for placing siblings together.

We have previously explained that

W.Va. Code § 49-2-14(e) (1995) [now West Virginia Code § 49-4-111(e)] provides for a "sibling preference" wherein the West Virginia Department of Health and Human Resources is to place a child who is in the department's custody with the foster or adoptive parent(s) of the child's sibling or siblings, where the foster or adoptive parents seek the care and custody of the child, and the department determines (1) the fitness of the persons seeking to enter into a foster care or adoption arrangement which would unite or reunite the siblings, and (2) placement of the child with his or her siblings is in the best interests of the children. In any proceeding brought by the department to maintain separation of siblings, such separation may be ordered only if the circuit court determines that clear and convincing evidence supports the department's determination. Upon review by the circuit court of the department's determination to unite a child with his or her siblings, such determination shall be disregarded only where the circuit court finds, by clear and convincing evidence, that the persons with whom the department seeks to place the child are unfit or that placement of the child with his or her siblings is not in the best interests of one or all of the children.

Syl. Pt. 4, *In re Carol B.*, 209 W. Va. 658, 550 S.E.2d 636 (2001). The record is clear that at the time the circuit court was tasked with determining the appropriate placement for all the children, only child J.T. was in a foster home that was being considered as a permanent placement for any of the children. M.M., W.M., and T.M. were placed in a foster home that did not wish to continue housing the children permanently. As such, the court was correct in finding that "we only have one foster home present before the [c]ourt seeking permanent placement and that is the

[foster parents of J.T.] because they have placement of [J.T.]." The court went on to explain that petitioners "are not foster parents as to these children, have not been foster parents as to these children." Although petitioners had been approved as *potential* foster parents for the children, the court's finding in this regard is accurate. This distinction is critical to the circuit court's determination as to the proper permanent placement of all four children.

On appeal, petitioners rely heavily on the fact that the DHHR recommended placement of the children in their home upon evidence that they were designated as a fictive kinship placement. This argument, however, ignores the fact that placing all four children in petitioners' home would have required moving J.T. from a home in which he had substantially bonded with his foster parents. Given that M.M., W.M., and T.M. were not yet placed in a home that was being considered for permanent placement, those children necessarily had to transition to a new home regardless of which option the circuit court chose. As such, it was clearly less disruptive to place all four children in the home of J.T.'s foster parents.

Further, although petitioners cite to the testimony of a DHHR adoption specialist regarding her opinion about the children's permanent placement, petitioners ignore the fact that this witness was the adoption specialist for M.M., W.M., and T.M. only. That witness specifically testified that her recommendation for placement in petitioners' home concerned only M.M., W.M., and T.M., given that she was "not familiar with [J.T.] to be honest because he's not my case." Despite this lack of familiarity, however, the adoption specialist did testify that all four children shared a bond that "continued to exist." Further, the Child Protective Services ("CPS") worker who continued to handle J.T.'s case recommended that J.T. be permanently placed with his current foster family so that he would not have to "be uproot[ed] . . . completely and start[] over." Even more importantly, that CPS worker indicated that she was the worker for M.M., W.M., and T.M. prior to their transfer to the adoption specialist and that she believed that those children should also be placed with J.T.'s foster parents. As such, counsel for the DHHR recognized that there was "a disagreement amongst the workers and the Department" regarding the children's permanent placement. Contrary to petitioners' assertion that the circuit court purposely ignored their designation as fictive kin[5] of three of the children or the DHHR's recommendation regarding placement in their home, the record reflects that the circuit court considered this evidence, including the conflicting recommendations from DHHR personnel, and ultimately based its decision on the children's best interests and the preference for placing siblings together. *See Kristopher O.*, 227 W. Va. at 192, 706 S.E.2d at 389 ("[T]he best interests of the child is the polar star by which decisions must be made which affect children."). For these reasons, it cannot be said that the circuit court misapplied the law, as petitioners allege, and we find no error on appeal.

---

[5]In support of their assignment of error on appeal, petitioners cite to West Virginia Code § 49-4-601a, which provides, in relevant part, that "[w]hen a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child." Petitioners acknowledge, however, that "this statute does not concern the decision of permanent placement of the children." We agree, and further note that this statute is not instructive on appeal, given that the children's placement upon removal from the home in question is not at issue on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISQUALIFIED:**

Justice William R. Wooton