STATE OF WEST VIRGINIA

*In re* **L.L.-1, L.L.-2, and L.L.-3**

**No. 17-0917** (Kanawha County 17-JA-41, 42, and 43)

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grandmother, L.D., by counsel Steven M. Wright, appeals the Circuit Court of Kanawha County's September 14, 2017, order denying her placement of L.L.-1, L.L.-2, and L.L.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Christopher C. McClung, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in failing to consider her for placement of the children and in ultimately denying her such placement.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as L.L.-1, L.L.-2, and L.L.-3 throughout this memorandum decision.

[2]In her brief on appeal, petitioner sets forth her first assignment of error as follows: "The Circuit Court Committed Reversible Error When it Denied [Petitioner's] Motion to Intervene And Denied Placement of Minor Children With Their Paternal Grandmother In Violation of West Virginia Code § 49-4-114(a)(3)." However, in the accompanying argument in support of this assignment of error, petitioner provides no authority governing motions to intervene and otherwise fails to present any argument regarding the denial of her motion to intervene, beyond a simple conclusion that denying the motion constituted error. Moreover, in support of her third assignment of error concerning the circuit court erroneously imputing the father's actions to her, petitioner cites to no law or other authority in support.

Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

[t]he brief must contain an argument exhibiting clearly the *points of fact and law presented*, the standard of review applicable, *and citing the authorities relied on* . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(continued . . . )

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2017, the DHHR filed an abuse and neglect petition against the parents that alleged the father was charged with fleeing from an officer and two counts of child neglect creating a risk of injury. These charges stemmed from the father fleeing from a police officer at a high rate of speed with two of the children in the vehicle. According to the petition, the father attempted to strike an officer with the vehicle and the officer likely would have fired into the vehicle, had he not noticed the children. The petition further raised allegations of domestic violence and failure to provide the children with appropriate medical care.

In March of 2017, petitioner appeared at the adjudicatory hearing and sought to intervene in the proceedings. Petitioner sought placement of the children and informed the circuit court that she paid for the residence in which the parents lived with the children, in addition to having bought other supplies for the family. In support of her argument concerning placement, petitioner indicated that she saw the children every day before they were removed. The circuit court then inquired why petitioner did not seek to remedy the conditions of abuse and neglect in the home, to which she replied that she did not know their extent. Although the circuit court denied petitioner's motion to intervene at that time, it directed the DHHR to conduct a home study on petitioner's residence. In regard to adjudication of the parents, the circuit court heard evidence that they failed to provide recommended medical attention for the infant, who they removed from the hospital against medical advice and was "severely dehydrated." The circuit court heard further evidence that the parents slept in a car in the driveway with the baby and engaged in extensive domestic violence.

---

(emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, then-Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to these assignments of error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, on appeal, the Court will not address the assignment of error alleging that the circuit court imputed the father's actions to petitioner or the allegation that denying her motion to intervene was error.

At a dispositional hearing in May of 2017, the DHHR advised that neither the guardian nor the Court Appointed Special Advocates ("CASA") representative recommended such placement due to concerns that petitioner would not keep the father away from the children. Specifically, the CASA report prepared for the dispositional hearing indicated that placement with petitioner was inappropriate for several reasons, including the fact that she "appear[ed] to be enmeshed and enabling" the "neglectful and violent father and failed to protect the children from neglect while they lived in a home she owned and visited daily. Moreover, the CASA report noted that "the children reportedly . . . did not respond to [petitioner] when she visited them . . . ." Finally, the DHHR elicited evidence that the children were thriving in their current foster home. Ultimately, the circuit court terminated the parents' parental rights.

At a review hearing in August of 2017, the circuit court again denied petitioner's motion to intervene. The circuit court acknowledged that petitioner passed her home study but also found her testimony lacked credibility. The circuit court further found that petitioner "is not a suitable placement based upon what is in the best interest of the children . . . ."[3] As such, the circuit court denied petitioner placement of the children. It is from the resulting order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in failing to consider her for placement of the children. We find, however, that petitioner's argument lacks support in the record or applicable authority. According to West Virginia Code § 49-4-114(a)(3),

---

[3]The parents' parental rights were terminated below. The children remain in a foster home with a permanency plan of adoption therein.

[f]or purposes of any placement of a child for adoption by the department, *the department shall first consider* the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

(emphasis added). This statute, setting forth a preference for placement of children with their grandparents, imposes a duty on the DHHR to consider grandparents for placement. Petitioner admits that the DHHR complied with this requirement. The statute does not, however, require the circuit court to agree with the DHHR's recommendation outright. Indeed, we have held that West Virginia Code § 49-1-114(a)(3) "contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 4, in part, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005).

Further, the record does not support petitioner's assertion that the circuit court failed to consider her for placement of the children. Petitioner cites to a portion of the transcript for the August of 2017 hearing concerning permanency wherein the circuit court stated that petitioner "will not be considered for any type of placement with these children." However, petitioner fails to acknowledge that this statement was made after the circuit court was presented with evidence at multiple hearings concerning whether placement in petitioner's home was in the children's best interests. The circuit court further made this statement after specifically finding that "based on the evidence presented in this case . . . [, petitioner] does not appear . . . to be a suitable placement for the children." Accordingly, it is clear that the circuit court did consider petitioner for placement of the children, as evidenced by its direction that the DHHR conduct a home study, and only excluded her from consideration once it determined that she was not a suitable caretaker. For these reasons, we find that petitioner is entitled to no relief in this regard.

Finally, petitioner argues that the circuit court erred in denying her placement of the children. In support of this argument, petitioner argues that the circuit court based its decision on the recommendation of the guardian ad litem, who she claims failed to make an independent investigation into the appropriateness of petitioner's home. According to petitioner, the guardian did not question her in an effort to ascertain if she would be an appropriate placement and otherwise failed to visit the home prior to rendering his opinion on the final placement. As such, petitioner argues that denying her placement constituted error. We do not agree.

This Court has stated that, as a part of a "full and independent" investigation of the facts involved in an abuse and neglect case, guardians' duties "include[] interviewing all prospective parents when a child's placement is at issue." *In re Carol B.*, 209 W.Va. 658, 667 n. 6, 550 S.E.2d 636, 645 n. 6 (2001). Under the limited facts of this case, however, we find that such an interview with petitioner was unnecessary, given the evidence already in the record that

4

established petitioner was, or should have been, aware of the conditions of abuse and neglect in the home, but took no steps to protect the children. As noted above, petitioner initially indicated to the circuit court that she saw the children every day prior to their removal from the parents' care. The record further shows that the children exhibited several issues with medical neglect, including one child who was so severely dehydrated that hospitalization was necessary. Other evidence established that one child required corrective lenses, the two oldest children were severely underweight and barely talking, and one child was still using a bottle at age three. Despite her daily presence in the home, petitioner took no action to ensure the children's safety.

On appeal, petitioner argues that she should not be held to a higher standard than the DHHR, who was providing services in the home prior to the children's removal. According to petitioner, she had no duty to protect the children because she believed that the DHHR "was managing the situation" and, as a result, did not take further action. We find this argument unpersuasive. The fact that the DHHR was providing the parents services in the home did not render any further abuse or neglect impossible, and petitioner, as an individual who supposedly saw the children on a daily basis, was in a position to identify any ongoing issues that presented a threat to the children's welfare. While petitioner argues that she is not a medical professional or a social worker and, thus, should not have been required to identify issues of medical neglect, the fact remains that easily identifiable issues were occurring in the home. Specifically, the CASA report submitted to the circuit court indicated that the children "had no clothing[.]" Clearly, this is an issue that should have caused petitioner some alarm, given her daily presence in the home. Instead, the CASA report asserted that petitioner "enable[ed the father's] criminal and drug-abusing lifestyle by providing him with a furnished home."

Further, while it is true that petitioner passed her home study with the DHHR and achieved certification to foster children, these facts alone are not sufficient to establish that she be granted permanent placement of the children. Indeed, we have held that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W.Va. 91, 755 S.E.2d 8 (2014). Moreover, in regard to the grandparent preference, we have held that

> [b]y specifying in West Virginia Code § 49-3-1(a)(3) [now West Virginia Code § 49-1-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

*Napoleon S.*, 217 W.Va. at 256, 617 S.E.2d at 803, Syl. Pt. 5. Here, the circuit court specifically found that petitioner "is not a suitable placement based upon what is in the best interest of the children . . . ." This finding was based, in part, upon the fact that petitioner admitted to being in the home on a daily basis at such time as the children were being abused and/or neglected by the parents. Accordingly, given all the circumstances of the case, we find no error in the circuit court denying petitioner permanent placement of the children at issue.

5

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 14, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 9, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Menis E. Ketchum

I would remand this case for further development. The children's grandmother sought to intervene and gain custody of her three grandchildren. Although the grandmother's home passed a home study, the guardian ad litem did not interview her and recommended she not be given custody. Our case law is clear that a guardian ad litem has a duty to interview prospective parents when a child's placement is at issue. *In re Carol B.*, 209 W.Va. 658, 550 S.E.2d 636 (2001).