**STATE OF WEST VIRGINIA**

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.K., C.H., C.B., G.B., and T.B.**

**No. 19-1003** (McDowell County 18-JA-100-M, 18-JA-101-M, 18-JA-102-M, 18-JA-103-M, and 18-JA-104-M)

**MEMORANDUM DECISION**

Petitioner Mother B.A., by counsel Gloria M. Stephens, appeals the Circuit Court of McDowell County's October 4, 2019, order terminating her parental rights to C.K., C.H., C.B., G.B., and T.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Andrew Waight, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her upon insufficient evidence, (2) failing to adhere to the preference for placing siblings together and the best interest standard in determining the children's placement, (3) failing to rule on her motion for a post-dispositional improvement period, (4) terminating her parental rights, and (5) denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 10, 2018, the DHHR filed an abuse and neglect petition alleging that petitioner improperly supervised the children. The facts giving rise to the petition occurred over a period of approximately four months. Specifically, the petition alleged that during an incident in June of 2018, C.H., then four years old, was found "wandering the streets of Welch" around 4:50 a.m. According to the record, law enforcement stated that the child "was a significant distance from

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[petitioner's] home and . . . was very lucky he was not injured." Petitioner admitted that C.H. had "a history of getting out of the home." The petition further alleged that child C.B., then three years old, was also found "out in the road" during a second incident that occurred several days prior to the petition's filing. According to the petition, petitioner admitted to taking Suboxone, but was unable to provide a prescription and admitted to abusing the drug. Additionally, petitioner submitted to a drug screen prior to the petition's filing and tested positive for Suboxone, cocaine, and benzodiazepines. The DHHR alleged that it attempted to implement protection and safety plans in the home at various times, but that petitioner's noncompliance ultimately required removal of the children. Petitioner thereafter waived her right to a preliminary hearing.

In November of 2018, the circuit court held an adjudicatory hearing, during which a DHHR employee testified that safety services were in place in petitioner's home from approximately June of 2018 until October of 2018. Despite the fact that the DHHR sought to improve petitioner's ability to properly supervise the children following the first instance of a child wandering from the home in June of 2018, a second incident occurred in October of 2018. According to this employee, the DHHR did not intend to file a petition during this period because petitioner was cooperating with services. However, following the children's emergency removal after the second incident, petitioner stopped complying with the DHHR's services. A DHHR employee further testified to the circumstances of the children leaving the home unsupervised. According to the employee, petitioner admitted that during one incident in which C.H. wandered from the home, he "would have had to pass a very steep inground pool" to have accessed the area where he was found. According to the witness, the pool was "the steepest she has ever observed" and was uncovered with some water in it. Ultimately, the circuit court adjudicated petitioner as an abusing parent upon her failure to properly supervise the children or otherwise protect them from potential injury. The circuit court further noted petitioner's positive drug screen in making its finding regarding her status as an abusing parent.

In January of 2019, petitioner agreed to a case plan that required her to refrain from substance abuse, submit to regular drug screens, and undergo substance abuse treatment. Petitioner was also required to participate in parenting and adult life skills services and visit the children on a regular basis. Further, during a status hearing in March of 2019, it was expressed that the children "were removed from their foster home in light of [the parents'] concerns regarding possible abuse by the foster parents." The circuit court found, however, that the claims of abuse were unsubstantiated. During this hearing, petitioner also disclosed a history of mental health issues and multiple admissions to mental health care facilities, including three admissions during the current proceedings, and two mental hygiene proceedings. During this hearing, the circuit court observed petitioner's demeanor to be "combative." According to the court, petitioner accused a DHHR employee of lying and was admonished by her counsel to be silent. Based on this information, the circuit court ordered petitioner to undergo a psychological evaluation. The circuit court also noted that petitioner refused to comply with drug screening in the absence of an explicit court order, despite the fact that she agreed to that condition in executing her case plan. As such, the circuit court ordered petitioner to submit to such screening during the March of 2019 hearing.

Over the course of two status hearings, the circuit court heard evidence that petitioner failed to appear for her psychological evaluation on two occasions. Additionally, the circuit court heard evidence that indicated that C.B. struggled in his foster placements and was likely autistic. In June

of 2019, petitioner submitted to a psychological evaluation, although she was two hours late for her appointment and refused to complete paperwork before becoming belligerent and leaving. Petitioner then contacted the evaluator and indicated that, "at the advice of her lawyer," she wished to complete the evaluation. Upon returning, petitioner again failed to complete the evaluation, failed to return for an additional appointment, but ultimately returned a few days later to complete the evaluation.

In July of 2019, the circuit court held a dispositional hearing, during which the DHHR presented evidence from multiple service providers regarding petitioner's efforts to remedy the conditions of abuse and neglect during the proceedings. According to one DHHR employee, petitioner's compliance with services was sporadic. Specifically, the employee testified that, with the exception of the two weeks prior to the hearing, petitioner had not participated in services, including visitation, since April of 2019. Specifically, petitioner cancelled twenty-five visits with the children between December of 2018 and June of 2019, and failed to visit the children at all for approximately three months during that period. Further, at least one visit was cancelled because petitioner appeared to be under the influence of drugs or alcohol. The provider attempted to have petitioner submit to a drug screen at that time, but petitioner "became agitated and refused, stating that the only person who could make her take a drug screen was the judge." The employee also testified that when petitioner was admitted in February of 2019 for mental health treatment, she tested positive for cocaine and methamphetamine. The record also established that petitioner was removed from a substance abuse treatment program due to her noncompliance. The circuit court also considered petitioner's psychological evaluation, during which petitioner admitted to substance abuse, including her use of Suboxone while "not currently under the supervision of a prescribing physician," and being arrested during the proceedings.

Thereafter, by order entered on October 4, 2019, the circuit court terminated petitioner's parental rights and denied her post-termination visitation with the children.[2] In the final order, the circuit court found that petitioner was provided services for thirteen months, yet her participation was "passive, halfhearted and lackluster at best." Further, the circuit court found that "there tragically appears to be a complete absence of desire on the part of [petitioner] to be involved in the lives of her children." According to the circuit court, petitioner failed to meet the requirements of her case plan, to which she agreed. Based on this failure, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare. The circuit court also noted that, although petitioner never moved for a post-adjudicatory improvement period in writing as required, she did move for one orally. However, the circuit court found that she failed to demonstrate that she would fully comply and denied the motion. The circuit court also denied petitioner post-termination visitation with the children, finding that it would not be in the children's best interests. Thereafter, on October 21, 2019, petitioner filed a motion for stay and a motion for

---

[2]The father of C.H. is nonabusing, and the permanency plan for C.H. is to remain in the father's care. The fathers of the remaining children retain their parental rights as the proceedings against them are ongoing. Currently, children C.K., G.B., and T.B. are placed together in a foster home with a concurrent permanency plan of adoption in that home if the father's parental rights are ultimately terminated. Due to behavioral issues and the need for heightened care, C.B. has been placed in a separate foster home with a concurrent permanency plan of adoption therein if the father's parental rights are terminated.

a post-dispositional improvement period. The circuit court denied the motion for a stay and did not rule on the motion for a post-dispositional improvement period. It is from the October 4, 2019, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in adjudicating her as an abusing parent upon insufficient evidence of the conditions existing at the time of the petition's filing. As such, we note the following:

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (citation omitted). Finally, pursuant to West Virginia Code § 49-1-201, a neglected child is one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian

4

Upon our review of the record, we find that the DHHR satisfied the applicable burden and established that the children were neglected children.

In support of this assignment of error, petitioner argues that the petition was filed, in part, because of her failed drug screen. According to petitioner, this was erroneous because the circuit court found that she tested positive for multiple substances on October 7, 2018, instead of the correct date of October 9, 2018. Petitioner argues that there "was no clear and convincing evidence . . . that connected . . . petitioner's October 9, 2018[,] drug tests results to the October 7, 2018, incident." We find, however, that it is of no consequence that the circuit court found that petitioner tested positive for substances two days earlier than she actually did, given that the test results simply reflect petitioner's substance abuse and are not tied directly to whether she may have actually been under the influence at the time the child wandered from the home on October 7, 2018. Even more importantly, petitioner did not have to be under the influence at the time her children were improperly supervised in order for her to be adjudicated of neglect, given that the evidence overwhelmingly established that she could not provide the supervision necessary to protect the children.

Petitioner also argues that it was not her conduct that necessitated the petition's filing. Rather, she argues that it was the conduct of C.L., an individual that the DHHR permitted to be in the home to provide the children with appropriate supervision pursuant to the protection plan, that resulted in the petition's filing. In support, petitioner cites to a DHHR employee's testimony that the petition was filed "[b]ecause the protection plan didn't get followed, where [C.L.] had left for an hour." As such, petitioner argues that she could not be adjudicated because no evidence connected C.L.'s violation of the protection plan on October 8, 2018, to the October 7, 2018, incident involving C.B. We find, however, that petitioner's argument misstates the record and is simply an attempt to deflect blame for her failure to properly supervise the children. The reality is that, due to petitioner's neglect, her young children were twice permitted to wander from her residence without supervision, thereby exposing the children to a great risk of harm. While petitioner cites the DHHR's stated intent not to file a petition during the period between the first incident and the second as supportive of the notion that a petition was not necessary, she ignores the simple fact that after approximately four months of services designed to prevent her neglect, another child was allowed to leave the residence unsupervised. Petitioner further ignores the reality that her neglect of the children required C.L.'s presence in the first place. While it may be true that the DHHR's decision to finally file a petition was based upon the fact that the protection plan was not followed, all of these actions were predicated upon petitioner's pattern of extreme neglect, given that she allowed her young children to wander from the home unsupervised for extended periods and expose themselves to grave danger, including the potential for drowning. These conditions not only existed at the time of the petition's filing, but as far back as four months prior to the petition. Petitioner's attempts to blame C.L. for the petition's filing only underscore her continued attempts to deflect blame for the poor supervision she provided that resulted in two children leaving the home under dangerous circumstances on multiple occasions. As such, it is clear that the DHHR established, by clear and convincing evidence, that the children were neglected.

Next, petitioner argues that the circuit court erred in permitting the children to be separated and placed in multiple foster homes and failed to consider their best interests in making these determinations. We find, however, that petitioner is not entitled to any relief in this regard for several reasons, chief among them being the fact that even if petitioner could establish some error on the part of the circuit court in this regard, she would not be entitled to the return of the children. Put simply, the resolution of this issue has no bearing on the fact that petitioner neglected the children, which necessitated their removal, and failed to remedy the conditions of abuse and neglect, which precluded their return to her care. It is true that West Virginia Code § 49-4-111(e) establishes a preference for children removed from their parents' custody to be adopted in the same home. However, petitioner fails to acknowledge that this Court has established that this preference is not absolute. Syl. Pt. 4, *In re Carol B.*, 209 W. Va. 658, 550 S.E.2d 636 (2001) (recognizing that siblings may be separated when the foster or adoptive parents of a child's sibling do not seek the "care and custody of the child" or when such separation is in the children's best interests). Petitioner further ignores the reality of the situation below, which concerned the removal of five children. One child was returned to the custody of his nonabusing father, but the remaining children were not that father's biological children. Additionally, the record shows that petitioner actively undermined the children's placement by raising allegations of abuse by a foster parent that were never substantiated. Finally, one child required multiple placements due to his need for heightened care and the belief that he may be diagnosed with autism, the manifestations of which petitioner was shown to have ignored instead of seeking treatment upon their display. Simply put, there are extenuating circumstances that preclude the placement of all five children together in the same home, and we decline to find that petitioner would be entitled to any relief regarding her adjudication or the termination of her parental rights in relation to the children's various placements.

Next, petitioner argues that the circuit court erred in failing to rule on her motion for a post-dispositional improvement period. We find this argument entirely without merit, however, given that the circuit court explicitly denied petitioner's request for a post-adjudicatory improvement period. Indeed, petitioner acknowledges that she filed her written motion for a post-dispositional improvement period on October 21, 2019, which was approximately twenty days after the entry of the circuit court's order terminating petitioner's parental rights. Given that the circuit court had already entered its final dispositional order, petitioner's motion for a post-dispositional improvement period could only be viewed as a motion to modify disposition. However, petitioner's parental rights had already been terminated, thus depriving her of standing to file such a motion under West Virginia Code § 49-4-606. Syl. Pt. 6, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007) ("A person whose parental rights have been terminated by a final order . . . does not have standing as a 'parent,' pursuant to [West Virginia Code § 49-4-606] to move for modification of disposition of the child with respect to whom his/her parental rights have been terminated.").

Further, as noted above, the dispositional order on appeal specifically denied petitioner's request for a post-adjudicatory improvement period. Given that the standard for obtaining either type of improvement period is identical, petitioner's motion for a post-dispositional improvement period was redundant. While petitioner argues that the guardian suggested at disposition that an improvement period might be appropriate, she cites to no evidence that she satisfied the burden necessary to obtain one. As this Court has held, a circuit court may grant a parent a post-

6

adjudicatory improvement period under West Virginia Code § 49-4-610(2)(B) when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, "[t]his Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). As set forth above, petitioner received services for thirteen months, yet failed to participate in those services or otherwise correct the conditions of abuse and neglect. As such, she clearly demonstrated that she was not likely to fully participate in an improvement period. Moreover, this Court has held that circuit courts have the discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). As such, we find no error in the denial of petitioner's motion for an improvement period.

Petitioner next argues that it was error to terminate her parental rights without permitting her the opportunity to participate in an improvement period. Having already addressed the propriety of the circuit court's denial of petitioner's motion for an improvement period, we find no error in this regard, especially considering the ample evidence upon which the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of her rights was necessary for the children's welfare. According to West Virginia Code § 49-4-604(b)(6) (2019),[3] circuit courts may terminate parental rights upon these findings. Further, according to West Virginia Code § 49-4-604(c)(3) (2019), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future includes when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Here, the evidence overwhelmingly supports this finding. Moreover, "[w]e have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Here, the record shows that petitioner went as long as three months without visiting the children, prompting the circuit court to find that "there tragically appears to be a complete absence of desire on the part of [petitioner] to be involved in the lives of her children." Accordingly, the record supports the findings necessary for the termination of petitioner's parental rights. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find that the circuit court did not err in terminating petitioner's parental rights.

In regard to petitioner's final argument that the circuit court erred in denying her post-termination visitation with the children because she had a strong emotional bond with them, we find no error. Importantly, petitioner cites to no evidence to support her assertion of such a bond. Further, even assuming such a bond existed, petitioner disregarded this bond by failing to visit with the children for extended periods as is evidenced by the record. On appeal, petitioner argues that an abrupt cessation of contact between her and the children would be detrimental to their wellbeing, but she fails to acknowledge the fact that she willfully caused such an abrupt cessation by her conduct during the proceedings. Petitioner further argues that the circuit court's order is devoid of analysis as to whether visitation was warranted, but this argument is not supported by the record. Indeed, the circuit court's final order clearly states that post-termination visitation was denied because "such visitation would be inconsistent with the best interests" of the children. This finding was based upon ample evidence of petitioner's detrimental impact upon the children while they were in her custody. As this Court has held,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Given the circuit court's detailed order on appeal and its specific findings regarding the denial of post-termination visitation, we find that petitioner is entitled to no relief on this issue.

Lastly, because the proceedings in regard to two of the fathers are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

9