# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.R. Jr.**

**No. 19-1131** (Berkeley County 18-JA-36)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner M.H., the child's maternal great-grandmother, by counsel William Prentice Young, appeals the Circuit Court of Berkeley County's November 5, 2019, order granting permanent placement of M.R. Jr. to the foster mother, J.C., who was the adoptive mother of M.R. Jr.'s sisters.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tracy Weese, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. The child's foster mother, J.C., by counsel Michael Santa Barbara, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that the bond between the child and his siblings outweighed the bond that petitioner established as the child's temporary guardian and in denying petitioner placement of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2017, petitioner filed a temporary guardianship petition for M.R. Jr., who was five months old at the time, alleging that the child was in an unsafe environment with his parents and that she was the primary caregiver. The circuit court appointed the child a guardian ad litem who filed a report in October of 2017. In the report, the guardian noted that the child's parents were the subject of an ongoing DHHR investigation, due to allegations of abuse and a prior termination of their parental rights. The guardian concluded that petitioner was "a fit and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). The other children involved in the abuse and neglect proceedings are of no relation to petitioner and, accordingly, are not at issue in this appeal.

appropriate guardian," but that she could not determine that the parents were "sufficiently unfit" to warrant granting petitioner guardianship over their objection. Nevertheless, the parents consented to the circuit court appointing petitioner as the temporary legal guardian in October of 2017. Before a scheduled review hearing on the temporary guardianship petition, the DHHR filed an abuse and neglect petition against the child's parents in February of 2018, naming M.R. Jr., as well as his three sisters. Petitioner and J.C., the adoptive mother of M.R. Jr.'s sisters, were named as nonabusing parties. The petition against the parents alleged drug use, physical abuse, domestic violence, and a prior involuntary termination of parental rights. The circuit court consolidated the temporary guardianship petition into the abuse and neglect proceedings and granted the DHHR temporary custody of M.R. Jr., although petitioner was permitted to retain physical custody of the child. The remaining children were permitted to remain in their nonabusing mother's custody.

Thereafter, the parents voluntarily relinquished their parental rights to the children. At a hearing in January of 2019, the DHHR introduced visitor logs and calls between petitioner and the child's mother, who was incarcerated. The DHHR alleged that the calls "raised concerns about [petitioner's] ability to protect [M.R. Jr.]." As a result of the calls, DHHR caseworkers removed the child from petitioner's home in February of 2019. Later that month, petitioner filed a motion for return of physical custody of the child and requested an emergency hearing. In March of 2019, the guardian filed a response in opposition to petitioner's motion, citing the call logs and claiming that petitioner was aware of a continuing relationship between the child's parents. At a hearing in March of 2019, the circuit court ordered that the child be returned to petitioner's physical custody. However, foster parents C.S.-T. and S.S.-T., who took custody of M.R. Jr. when he was removed from petitioner, moved to intervene in the case. C.S.-T. and S.S.-T. had previously adopted M.R. Jr.'s older brother.

In April of 2019, the circuit court held a placement hearing wherein it heard a motion from M.R. Jr.'s temporary foster parents, C.S.-T. and S.S.-T., who sought custody of the child. At the hearing, the DHHR informed the court that it supported placement of the child with the foster parents. Thereafter, J.C., the mother of M.R. Jr.'s three sisters, informed the circuit court that she wanted placement of the child as well. At the end of the hearing, M.R. Jr.'s temporary foster parents moved the court for weekly visitation for M.R. Jr. and all of his siblings, on the condition that petitioner not be present at the visits. The circuit court ordered that the child begin with one or two visits with some of his siblings and then have visitation with all of the children, supervised by J.C. Petitioner was not allowed to be present for the visitation. The circuit court then scheduled a further placement hearing.

The circuit court held another placement hearing in May of 2019. At the hearing, the temporary foster parents, C.S.-T. and S.S.-T., informed the court they no longer sought placement of the child, but wanted M.R. Jr. placed with J.C. as opposed to petitioner because of their concerns from a prior abuse and neglect proceeding and the closeness between M.R. Jr. and his siblings. Next, a DHHR caseworker testified that the child should be placed with J.C. and his siblings. J.C. then testified that she and her husband sought placement of the child because her daughters, M.R. Jr.'s sisters, were asking about him and had frequent contact, including visits every other weekend, which predated the proceedings. J.C. further testified that the girls had lost their father due to the termination of his parental rights and that she did not want to see them lose their brother as well.

Finally, a court appointed therapist testified that M.R. Jr. saw J.C. as his "safe base" during visitation with his siblings and provided suggestions for a transition plan, if one was needed.

In October of 2019, the circuit court held its final placement hearing. Prior to the hearing, the circuit court received a bonding report from a doctor detailing M.R. Jr.'s bonds with petitioner, and J.C. The report indicated that petitioner had been the primary caretaker for most of the child's life and that petitioner had "done an excellent job raising [M.R. Jr.] to date," calling their bond "strong and resilient." The report also spoke favorably as to J.C.'s bond with the child, though it remarked that because of the limited time J.C. had spent with the child, it was not as strong as petitioner's bond. In addition to the written report, the circuit court asked the doctor what the harm would be if the child was placed with J.C. or petitioner and visitation was left at the discretion of the custodial parent. The doctor testified that the bond between petitioner and the child would be not harmed if there was reliable contact between them. If adequate visitation with petitioner was in place, the doctor testified that placement of the child in J.C.'s home would not be harmful. The doctor further testified that petitioner's home was best suited for a very young child while J.C.'s home was best suited for an older child or teenager, but that either home could accommodate a small child or older child as necessary. Finally, a court appointed therapist testified that petitioner and J.C. were working well together on visitation and that the child was doing well in both homes. The therapist further testified that she had seen J.C.'s bond grow with the child and that the child was developing a strong relationship with his sisters. The guardian recommended that the child be placed with J.C., while the DHHR offered no position.

After hearing evidence, the circuit court found that it was in the best interest of M.R. Jr. to be placed with J.C. through adoption. The circuit court found that petitioner and the child had a "wonderful and secure bond" and that although petitioner "may be the psychological parent," the child's best interest overrides petitioner's request for custody. Specifically, the circuit court found that "the bond with siblings, over time, is one of the most important and long standing relationships for a child and a bond that survives beyond parents, grandparents, and great[-]grandparents." In short, the circuit court found that adoption by J.C., who had already adopted and was raising the child's three sisters, was in his best interest. Additionally, the circuit court found that it was also in the child's best interest to have an ongoing relationship with petitioner. As such, the circuit court ordered a gradual transfer of the child from petitioner until he achieved permanent placement with J.C., with regular contact and visitation between petitioner and the child. It is from the November 5, 2019, order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing

---

[2]The parents both voluntarily relinquished their parental rights below. The permanency plan for the child is adoption in his current foster home.

court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred by finding that the bond between M.R. Jr. and his siblings outweighed the bond petitioner established with him and further in finding that placement with petitioner was not in the child's best interest.[3] Petitioner argues that "by assigning greater value to his prospective sibling relationship," the court's analysis in determining

---

[3]In support of this assignment of error, petitioner argues that M.R. Jr. was unlawfully or improperly removed from her custody in February of 2019. According to petitioner, the DHHR removed M.R. Jr. from her custody without prior notice to her or the circuit court based on recorded telephone conversations between her and the child's mother, who was incarcerated at the time. West Virginia Code § 49-4-602(c) provides that,

> "[r]egardless of whether the court has previously granted the department care and custody of a child, if the department takes physical custody of a child during the pendency of a child abuse and neglect case (also known as removing the child) due to a change in circumstances and without a court order issued at the time of the removal, *the department must immediately notify the court*."

(Emphasis added.) Here, by failing to notify the circuit court, the DHHR violated its statutory duty. However, given that the circuit court ultimately returned the child to petitioner's custody and did not consider the issue in making a final determination as to placement, no prejudice to petitioner resulted from the DHHR's failure to comply with this rule. As this Court has held,

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Here, the DHHR's failure to strictly comply with the requirements of § 49-4-602(c) does not constitute a substantial frustration or disregard of the applicable rules such that vacation of the dispositional order is warranted, given that petitioner suffered no prejudice as a result.

final placement for the child was flawed because it was "based upon a future perspective rather than a perspective based on the present."

This Court has long held a statutory preference for placing siblings in the same home:

> "W.Va. Code § [49-4-111(e)(1)] provides for a "sibling preference" wherein the West Virginia Department of Health and Human Resources is to place a child who is in the department's custody with the foster or adoptive parent(s) of the child's sibling or siblings, where the foster or adoptive parents seek the care and custody of the child, and the department determines (1) the fitness of the persons seeking to enter into a foster care or adoption arrangement which would unite or reunite the siblings, *and* (2) placement of the child with his or her siblings is in the best interests of the children. In any proceeding brought by the department to maintain separation of siblings, such separation may be ordered only if the circuit court determines that clear and convincing evidence supports the department's determination. Upon review by the circuit court of the department's determination to unite a child with his or her siblings, such determination shall be disregarded *only* where the circuit court finds, by clear and convincing evidence, that the persons with whom the department seeks to place the child are unfit *or* that placement of the child with his or her siblings is not in the best interests of one or all of the children."

Syl. Pt. 4, *In re Carol B.*, 209 W. Va. 658, 550 S.E.2d 636 (2001). Here, the circuit court correctly considered this preference when it decided that the child's best interest weighed in favor of placing him with J.C., the mother of the child's three sisters. Contrary to petitioner's assertion, the child's bond with his siblings was not entirely prospective. The record indicates that M.R. Jr. visited and formed bonds with his sisters for the majority of his life. Indeed, the guardian testified that the child had a regular and ongoing relationship with his sisters since his birth. Further, nearly every witness who testified, including a therapist and a bonding specialist, spoke highly of the child's relationship with his siblings. Additionally, while petitioner argues that she was the primary caregiver for the child for more than twenty-four months of his life, West Virginia Code § 49-4-111(b)(3) provides that

> "[w]hen a child has been placed in a foster care arrangement for a period in excess of eighteen consecutive months, and the department determines that the placement is a fit and proper place for the child to reside, the foster care arrangement may not be terminated unless the termination is in the best interest of the child and
>
> . . . .
>
> [t]he foster care arrangement is terminated *due to the child being united or reunited with a sibling or siblings*[.]"

(Emphasis added.) In its order, the circuit court was clear that petitioner was a great primary caregiver and formed a strong bond with the child. As the guardian notes, the fact that petitioner cared for M.R. Jr. for a significant period of time was not ignored or discounted. In its order, the

5

circuit court did not condition or cite any concerns about petitioner's capacity to raise the child and thus she would have made a "fit and proper place for the child to reside." However, the circuit court was also clear that "the bond with the siblings over time is the most important bond" and forms the basis of a long-standing relationship that the children have when great-grandparents, grandparents, and parents are no longer a part of the child's life. The circuit court heard evidence in the proceedings over the course of several months, holding placement hearings in April, May, and October of 2019. At the hearings, the court heard from a therapist, a bonding evaluator, J.C., the guardian, and petitioner, in addition to considering the bonding assessment, DHHR reports, service provider reports, guardian reports, and arguments from counsel. The court considered each potential placement carefully and thoughtfully weighed the outcomes. As such, the circuit court had ample evidence to support its findings and conclusion that placement with his siblings was in the child's best interest.

Although petitioner was initially appointed the temporary guardian and then retained physical custody of the child, the evidence as a whole indicated that the best interest of the child necessitated permanent placement with the foster parents and the child's siblings, with petitioner continuing to receive regular visits and involvement in the child's life. Finally, we have previously held that "[i] n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). After much consideration on the record, the circuit court properly found that the evidence at the permanency hearings demonstrated that placement with his siblings was in the child's best interest. Accordingly, we find that the circuit court did not err in denying petitioner placement of the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 5, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison